IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LARRY MEREDITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. -9-0713-CV-W-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying his application for supplemental security income ["SSI"] benefits under Title XVI of the Act, 42 U.S.C. § § 401, 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

1

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

Discussion

Plaintiff was twenty-three years old at the time of the hearing before the ALJ. He completed the 11th grade, and never obtained a GED. He has no past relevant work.

At the hearing before the ALJ, plaintiff testified that he had only worked at a grocery store during the summer, and quit because he had to go back to school. Sometimes, he has looked for janitorial jobs. He also testified that he has problems with anxiety; he has problems with sleeping; and has panic attacks where his heart beats fast if he hears a noise. He stated that he hears voices all the time; he thinks it is his mother or step-father talking to him, but then it isn't. This happens every day. He has trouble focusing, like when he writes a letter. He has suffered from depression. Plaintiff testified that he spends most of his day sleeping or watching television. He might get up around 3:00 to 4:00 in the afternoon. He doesn't know why he sleeps so much. He watches his daughter every other weekend, and plays with his nephews.

Plaintiff's stepfather also testified. He has lived with plaintiff since he was one. He testified that plaintiff has a hard time concentrating, and has difficulty performing simple tasks like taking out the trash without being reminded, even when he is in the middle of performing the job. Sometimes he does not know what he is doing, and he gets lost, even when trying to get to familiar places. He is very forgetful. Plaintiff's stepfather testified that he hears voices, he doesn't get out, and he thinks he is kind of paranoid.

According to the testimony of the vocational expert, if a hypothetical individual could understand and follow simple, repetitive instructions, could maintain attention and concentration for at least two hours without a break, and could not work directly with the public and with few co-workers, simple unskilled work at the medium exertional level is available. She testified that

jobs such as cleaner and order filler would be available. If the individual has more severe mental impairments, and would not be able to maintain attention, concentration, persistence or pace for even two hours at a time, the person would not be able to perform these jobs or any other skilled work. The vocational expert testified that one day per month of absence is allowable with these jobs, and that more than regular breaks would not be tolerated.

    The ALJ found that plaintiff has not engaged in substantial gainful activity since the application date, September 8, 2006. He further found that the medical evidence established that plaintiff suffers from paranoid schizophrenia and borderline intellectual functioning, which are severe impairments. It was his finding that plaintiff's mental impairments did not meet or medically equal the Listing of 12.04. The ALJ concluded that plaintiff has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels, with the following nonexertional limitations: "restricted to jobs that require following simple and repetitive instructions that requires no working with the public and working with few coworkers." [Tr. 11]. The ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 12]. Specifically, the ALJ found that plaintiff's symptoms of hallucinations, anxiety, suicidal ideation, and paranoia improved with medication, and that he had a pattern of not adhering to medication. He also found that plaintiff's functional capacity to pay attention and follow instructions was greater than he alleged because he was able to perform general cleaning duties in a hospital as part of a vocational program until he was discharged for failure to keep his scheduled meetings. He also noted that plaintiff had mentioned looking for work as a janitor, which would suggest that he is


capable of sustaining some level of work activity. The ALJ also noted that plaintiff had a history of drug use, and that he had indicated in June of 2003 that he did not want to work, but rather, wanted to sell drugs. The ALJ stated that he accorded great weight to the opinion of the state agency, and that he adopted the state agency's opinion as to the RFC. He indicated that he gave less weight to the opinion of Dr. Jamilia Fields, the treating physician, because "her assessment that he would miss more than 4 days of work per month and be expected to experience 3 or more repeated episodes of decompensation is not supported by the findings of sustained stable mood with medication compliance." [Tr. 13]. He also concluded that Dr. Fields' opinion did not "mention the interplay and effect of the claimant's history of drug use, and therefore fails to provide a thorough analysis of the claimant's mental health condition for disability purposes." [Id.]. Based on the opinion of a vocational expert, the ALJ found that plaintiff could perform the jobs of cleaner and order filler. Therefore, it was his finding that plaintiff is not under a disability as defined by the Act.

Plaintiff contends that the ALJ's decision should be reversed because the ALJ failed to give proper weight to the opinion of the treating and examining physicians and gave undue weight to a non-treating, non-examining, non-medical source; that he erred in finding that plaintiff had a moderate deficit in concentration, persistence, or pace, without substantial evidence to support that conclusion; and that he erred in his credibility findings with respect to plaintiff and his stepfather.

Plaintiff's medical records, including approximately two years of treatment by psychiatrists at Truman Medical Center, indicate that he has been diagnosed with borderline intellectual functioning. He has also been diagnosed with a history of psychosis, an anxiety

5

disorder, and paranoid schizophrenia. The records indicate that he is a poor historian, has difficulty complying with medication instructions, has been prescribed a variety of anti-psychotic medications at different times, and has been hospitalized for suicidal ideation. He has vague descriptions of hearing voices, has difficulty accounting for his time, and lives with his parents. He has worked occasionally at some manual-type jobs, but has no past relevant work. Among other factors mentioned in his medical records is the fact that his mother had noted that he had lost jobs because he is slow and has trouble understanding and completing tasks. He has had multiple traffic tickets for driving on the wrong side of the street and for walking in the street. He has a past history of drug use, including marijuana and PCP, but indicated to his physicians that he no longer used drugs.

Dr. Jamilia Fields, a treating psychiatrist, completed a Medical Source Statement-Mental ["MSS-M"] on November 9, 2008, in which she rendered the opinion that plaintiff suffered from paranoid schizophrenia and borderline intellectual functioning. She found that he had a current Global Assessment of Functioning ["GAF"] of 55, and that the highest GAF for the past year had been 50. She identified the following signs and symptoms of mental impairments: loss of intellectual ability of 15 IQ points or more; delusions or hallucinations; paranoia or inappropriate suspiciousness; oddities of thought, perception, speech or behavior; perceptual disturbances; social withdrawal or isolation; and pathological dependence or passivity. She further opined that he would be likely to be absent from work as a result of his mental impairments more than four days per month. She stated, that in terms of functional limitations, plaintiff was moderately limited in restrictions of daily living; difficulties of concentration, persistence or pace; and difficulties in maintaining social functioning. In terms of episodes of deterioration or

decompensation in work-like settings, she estimated that he would have repeated (more than 3) episodes of these. It was also the opinion of Dr. Fields that plaintiff's documented history of mental illness would cause more than a minimal limitation of his ability to do any basic work activities, with symptoms including his history of living at home for one or more years with an inability to function outside that highly supportive living arrangement, and a continued need for that arrangement. [Tr. 360-365].

The ALJ rejected these opinions, finding that "her assessment that he would miss more than 4 days of work per month and be expected to experience 3 or more episodes of decompensation is not supported by the findings of sustained stable mood with medication compliance." [Tr. 13]. He also concluded that her assessment did not mention the interplay of plaintiff's drug use. Rather, the ALJ accorded great weight to the non-examining, non-treating agency physician's opinion, finding that it was consistent with the objective clinical and diagnostic evidence and adopting that opinion as the RFC.

While a treating physician's opinions are ordinarily to be given substantial weight, they must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ may reject the opinion of any medical expert if it is inconsistent with the medical record as a whole. See Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). In Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000), the Eighth Circuit Court of Appeals discussed the weight to be given to the opinions of treating physicians, holding that the opinion of a treating physician is accorded special deference under the Social Security regulations. The opinion regarding a claimant's impairment will be granted

7

controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998). By contrast, "[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." Id.

In this case, the ALJ discounted the opinions of treating medical sources, and relied instead on the opinion of the non-examining source, who merely conducted a record review of the medical records.

The Court has carefully reviewed the records and finds that the ALJ erred in not giving greater weight to the opinion of the treating physician, and did not give legally adequate reasons for the decision not to rely on the medically supported assessment of the degree of plaintiff's limitations. Under the Social Security regulations, the opinion of a treating physician is accorded special deference, and the ALJ may only discount or disregard that opinion where there is better or more thorough medical evidence, or where a treating physician's opinion is so inconsistent that it undermines the credibility of such opinions. After reviewing the record as a whole, the Court finds that there was not substantial evidence to conclude that the opinions of the medical providers were inconsistent with plaintiff's treatment records, otherwise inconsistent with other medical evidence of record, or inconsistent with the testimony adduced at the hearing.

It is the Court's finding that the ALJ failed to support his decision to reject the opinion of Dr. Fields and other treating providers, as well as the record as a whole regarding plaintiff's limitations. Given the fact that the totality of the record supports the conclusions of Dr. Fields regarding plaintiff's limitations, the Court finds that the ALJ erred in the lack of weight afforded
8

to this opinion. It is apparent that the record supports a finding that plaintiff has a serious mental illness and borderline intellectual functioning, which would impede his ability to maintain gainful employment.

Regarding the ALJ's concern that the treating psychiatrist did not mention the interplay of plaintiff's history of drug abuse, the top of the MSS-M form indicates that the opinion is "independent of alcoholism and drug addiction." [Tr. 360]. Further, there is nothing in the record to suggest that Dr. Fields and Dr. Patel, both treating psychiatrists, were not aware of plaintiff's past drug use, and did not consider it when the provided their opinions regarding his diagnoses. There is no evidence to suggest that there was a medical determination that alcoholism or drug addiction may have contributed to plaintiff's mental illness, such that the relevant regulations would come into play, which provide that an individual shall not be considered disabled if alcoholism or drug addiction would be a contributing factor material to the determination that the individual is disabled. 20 C.F.R.§ 416.935 (relating to SSI). 42 U.S.C. § 423(d)(2)©; Estes v. Barnhart, 275 F.3d 722, 724-25 (8th Cir. 2002).

In terms of the ALJ's focus on plaintiff's non-compliance with medication, it is clear from the record that at least one of plaintiff's treating psychiatrists rendered the opinion that his pattern of non-adherence with multiple excuses could be the result of his paranoia or his difficulty adjusting to having a mental illness. The physician, Dr. Patel, noted that plaintiff had ongoing paranoia and auditory hallucinations; that he had a "pattern of non-adherence with multiple excuses, yet still expresses desire for treatment. Impaired insight into illness. Unsure if medication non-adherence related to paranoia/distrust or shame/ difficulty adjusting to acknowledgment of mental illness." [Tr. 347]. He was noted by Dr. Patel to have persecutuory-

type delusions, and that he "reportedly has experienced these symptoms in the absence of substances. Furthermore, he has had difficulty holding employment and reports social impairment as a result of these symptoms." [Id.]. Dr. Patel, during the time he treated plaintiff, observed that he tried different types of psychotropic medication. For some of these, plaintiff complained of excessive sleeping, which was noted by his family as well, or stomach problems, shakiness, ineffectiveness, or simply forgetting. The record indicates that attempting to find the appropriate medication has been an on-going problem. Further, even where some of the paranoia was lessened, the medical records indicate that plaintiff still had hallucinations, which were a "running commentary, voices conversing with each other, and critical words directed at him. No command-type hallucinations." [Tr. 342].

Although a treating physician's opinion is not controlling when it conflicts with other substantial medical evidence, that is not the case here. There is medical evidence in the record that substantiates the opinion of plaintiff's treating physician, who is a specialist in the field. Further, the only contrary evidence upon which the ALJ relied was that of a non-treating, non-examining state agency physician. The Court finds the ALJ erred in discounting the opinion of Dr. Fields, and finds that the record contains substantial evidence to support the conclusion that plaintiff is disabled due to severe mental impairments and borderline intellectual functioning.

Based on a full review of the record, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision to find that plaintiff does not suffer from a severe disabling mental condition. Accordingly, the court finds the Commissioner's decision should be reversed, and this case should be remanded for payment of benefits.

It is hereby

type delusions, and that he "reportedly has experienced these symptoms in the absence of substances. Furthermore, he has had difficulty holding employment and reports social impairment as a result of these symptoms." [Id.]. Dr. Patel, during the time he treated plaintiff, observed that he tried different types of psychotropic medication. For some of these, plaintiff complained of excessive sleeping, which was noted by his family as well, or stomach problems, shakiness, ineffectiveness, or simply forgetting. The record indicates that attempting to find the appropriate medication has been an on-going problem. Further, even where some of the paranoia was lessened, the medical records indicate that plaintiff still had hallucinations, which were a "running commentary, voices conversing with each other, and critical words directed at him. No command-type hallucinations." [Tr. 342].

Although a treating physician's opinion is not controlling when it conflicts with other substantial medical evidence, that is not the case here. There is medical evidence in the record that substantiates the opinion of plaintiff's treating physician, who is a specialist in the field. Further, the only contrary evidence upon which the ALJ relied was that of a non-treating, non-examining state agency physician. The Court finds the ALJ erred in discounting the opinion of Dr. Fields, and finds that the record contains substantial evidence to support the conclusion that plaintiff is disabled due to severe mental impairments and borderline intellectual functioning.

Based on a full review of the record, the Court finds that there is not substantial evidence in the record as a whole to support the ALJ's decision to find that plaintiff does not suffer from a severe disabling mental condition. Accordingly, the court finds the Commissioner's decision should be reversed, and this case should be remanded for payment of benefits.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England  
JAMES C. ENGLAND  
United States Magistrate Judge

Date: 9/1/10